UNITED STATES  DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK
*****************************************************
MAURICE CRAWLEY,

                             Plaintiff,

 vs.                       17-CV-1389

CITY OF SYRACUSE, POLICE OFFICER VALLON SMITH,
in his individual capacity; CHIEF FRANK FOWLER,
in his individual capacity; DOES 1-20,

                          Defendants.

*****************************************************

        Transcript of a Civil Motion  held on July 31, 2019,

before the HONORABLE DAVID N. HURD, at the United States

Federal Courthouse, 10 Broad Street, Utica, New York, before

Nancy L. Freddoso, Registered Professional Reporter and Notary

Public in and for the State of New York.


For Plaintiff:  LAW OFFICES OF BONNER & BONNER
               ATTORNEYS AT LAW
               475 GATE FIVE RD, SUITE 212
               SAUSALITO, CA 94965
          BY:  A. CABRAL BONNER, ESQUIRE

For Defendant:  HANCOCK & ESTABROOK, LLP
               ATTORNEYS AT LAW
               1500 AXA TOWER
               100 MADISON STREET
               SYRACUSE, NEW YORK  13202
          BY:  JOHN G. POWERS, ESQUIRE


               NANCY L. FREDDOSO, R.P.R.
          Official United States Court Reporter
             10 Broad Street, Room 316
              Utica, New York 13501
              (315) 793-8114

Motion

1              COURT CLERK:  Maurice Crawley versus the City of

2    Syracuse, Police Officer Vallon Smith and Chief Frank Fowler,

3    et al., 2017-CV-1389.

4              Attorneys, please note their appearance for the

5    record.

6              MR. BONNER:  Good morning, Your Honor.

7    Cabral Bonner appearing on behalf of plaintiff.

8              THE COURT:  Good morning.

9              MR. POWERS:  John Powers on behalf of Police Officer

10   Vallon Smith, Chief of Police Frank Fowler and the City of

11   Syracuse.  Good morning, Judge.

12             THE COURT:  Okay.  Be seated.

13             Mr. Bonner, you came from California?

14             MR. BONNER:  Yes, Your Honor.

15             THE COURT:  I thought you had local counsel, so

16   that's why I scheduled oral argument.  I didn't anticipate you

17   would be coming from California.  I thought you would use your

18   local counsel.  I think you had Mr. Ryder.

19             MR. BONNER:  Yes, Your Honor.  He was out of town

20   this week.

21             THE COURT:  Is he still in the case?

22             MR. BONNER:  Yes, Your Honor.

23             THE COURT:  Okay.  Well, I thought you would save

24   yourself a trip from California.

25             I want to state that I have reviewed all of the

Motion

1   submissions, and I am inclined at this moment to render a

2   decision from the bench on the various issues, but I will

3   listen to counsel, and, as I have done in the past, if I find

4   maybe something I have overlooked or something should be

5   clarified, I would reserve decision, and then issue a written

6   decision.

7           So at this time, Mr. Powers, you may be heard with

8   regards to the motion on behalf of the defendants.

9           MR. POWERS:  Thank you, Your Honor.

10          There is actually three different individual pieces

11  of relief that we are requesting.  I would first start out with

12  the observation that I do believe that the issues are fairly

13  well delineated in both the sets of papers as far as the

14  issues.

15          And the first observation that I would make is that

16  we are not asking for complete dismissal of the action.  We are

17  seeking dismissal of a portion of the action, certain claims,

18  based on what we submit is well settled law.  First, the New

19  York State claims, we contend, are timed barred under General

20  Municipal Law 50-i and 8-115 of the City Charter which requires

21  those claims to have been brought within a year and ninety

22  days.

23          The argument in opposition is based on a case called

24  Covington, and the argument being presented is that at least

25  the false imprisonment claim, that's Claim Six, should be

Motion

1   equitably tolled during the period of time that the criminal

2   proceedings were pending.  That, of course, does not apply to

3   the assault claim.  That assault claim accrues when the assault

4   occurs, that claim is time barred.

5         Covington, I believe it was decided in 1999 by the

6   Second Circuit.  It was effectively overruled by Wallace v.

7   Kato.  That is a Supreme Court case, Your Honor, that we have

8   cited.  And there have been multiple district court cases in

9   the circuit that have recognized that Covington has been

10  overruled on the very basis that it was argued by the

11  plaintiffs here.

12        In fact, in Jones v. City of New York, plaintiff

13  made the exact same argument that plaintiff makes here, and

14  that was in 2016, a Southern District case.  And the court held

15  that Covington -- stated, "Covington has been overruled by the

16  Supreme Court's decision in Wallace to the extent plaintiff

17  argues that his false arrest claims should have accrued at a

18  point later than when he was arraigned.  His argument fails

19  under Wallace."

20        It is undisputed that plaintiff was arraigned on

21  July 29th of 2018.  The action was brought in December of 20 --

22  or 2016.  The action was brought in December of 2017.  It is

23  time barred, Your Honor.  So under that law, which we submit is

24  well settled, the state law claims should be dismissed.

25        In addition, we are seeking the dismissal of the

Motion

1    individual 1983 claims for false arrest and false imprisonment.

2    That's Claim Three and Four.  The basis is, again, what we

3    submit is well settled law.  The presence of probable cause on

4    any claim arising out of the arrest immunizes the -- immunizes

5    the defendant from those claims, and that is because probable

6    cause is an element of the offense.  It is an element that has

7    to be pleaded and proved.  It can't be proven if it has been

8    found to exist in a criminal proceeding.

9            It appears as though plaintiff has acknowledged the

10   applicability of this law in their brief.  They argue primarily

11   on an equitable basis that you should look at whether or not

12   the offense that the conviction was obtained on is related to

13   the charges that were originally brought.  Your Honor, that is

14   an argument that has already been rejected by the Second

15   Circuit, and the two cases that I cite to you are Markavich

16   (phonetically) and the Jaegly.  And in those cases, not only

17   does the conviction -- not only can the conviction be on a

18   claim that's not the one the plaintiff was arrested for, it

19   doesn't even need to relate to the charges that the plaintiff

20   was arrested for.  It is the conviction of any crime.  That's

21   what the actual Second Circuit statement of the rule is.

22           And so we would submit, Your Honor, again, Claim

23   Three and Four are well settled law.  Those should be

24   dismissed.  What is left in the case is excessive force, 1983,

25   against Vallon Smith and then the Monell claim also based on

Motion

1    that alleged unconstitutional conduct against the city.

2              THE COURT:  After viewing the video, I clearly

3    understand why you did not move to dismiss the excessive force

4    claim.

5              MR. POWERS:  Well, I am not interested in wasting

6    anybody's time, least of all the Court's, Your Honor, and I

7    acknowledge that that claim has been pleaded as exists in the

8    pleading.  I always say there is another side of the story that

9    you haven't seen yet, but that is for another day.

10             So based on our view of this case, the properly

11   dismissed claim should be dismissed.  What's left is what

12   should be left, the excessive force and the Monell claim.

13             Now, we have also asked, Your Honor, that since

14   there are claims that are being dismissed, that in your

15   discretion you direct the plaintiffs to re-plead the complaint

16   and remove some of the surplusage and other material that we

17   would respectfully submit are not contemplated by Rule 8 or

18   Rule 10.

19             Now, I wouldn't have brought that motion if there

20   hadn't been claims to be dismissed.  I realize that sometimes

21   you just let these deviations from the rules remain

22   undisturbed, but since we are at this procedural point, I think

23   it makes since to have a properly pleaded complaint that is

24   limited to factual averments.

25             THE COURT:  You didn't have any problems making the

Motion

1   motion with the present complaint facts, did you?

2            MR. POWERS:  No, I didn't, Your Honor.

3            THE COURT:  Okay.

4            MR. POWERS:  But that doesn't change the exercise

5   that I am going to have to go through to try to answer the

6   complaint as it is written, and the rules don't -- they don't

7   contemplate that situation, where I am denying or admitting the

8   holding of cases and, you know, the elements of a claim.

9   That's not what the pleading is for.  So, you know, I

10  understand that's an area of discretion under 12(e).  I would

11  submit that the complaint can be cleaned up, and this is an

12  opportunity to do it.

13           Your Honor, finally we have asked for bifurcation

14  which is in your discretion.  We have cited some case law

15  that --

16           THE COURT:  So that if we bifurcate it, we would

17  have to have two trials then, right?

18           MR. POWERS:  Not necessarily, Your Honor.  The case

19  law looks at two issues overarching issues.  One is the issue

20  of prejudice, and one is the issue of efficiency, whether or

21  not we are going to do two trials or one trial.

22           Plaintiff has made the observation that our position

23  is self-serving on efficiency because the Monell claim only

24  goes away if the defendant win on the underlying claim.  And I

25  would submit to you that's not the only time the Monell claim

Motion

1   goes away.  It's not the only circumstance.  In fact, under the

2   majority of the circumstances in this case, the Monell claim

3   phase never occurs.  If plaintiff is successful on their claim,

4   in other words, there is a judgment on amount of damages for

5   the constitutional injury from the excessive force, that is an

6   enforceable judgment against the individual defendant which the

7   city is obligated to indemnify him on.

8           And so once that judgment is paid by the city, the

9   Monell claim goes away as well.  So if the claim is as strong

10  as the plaintiffs contend it is, as they seem to contend it is,

11  then they should have no problem of bifurcation.  In fact, from

12  efficiency standpoint, an excessive force claim is very

13  straightforward.  It is the facts and circumstances that were

14  known at the time within the four corners of that incident,

15  limited amount of depositions.  We could really try the

16  individual claim, without the albatross of the Monell claim, we

17  could try that by the end of the year.

18          There is only one limited circumstance where we get

19  to phase two, and, in fairness, I should mention this.  If the

20  plaintiff prevails on the individual claim, but the jury finds

21  that the defendant is entitled to qualified immunity, then we

22  would have to go to phase two.  Qualified immunity only

23  applies -- only immunizes the individual state actor.  It

24  doesn't immunize the city.  Then we would have to go to phase

25  two, do the Monell discovery, do the Monell case.

Motion

1              In that instance, I would submit, I would agree that

2       it would be insufficient.  But the other issue to consider

3       there is this issue of prejudice, Judge.  The case law has

4       recognized this.  You have got an individual defendant whose

5       liability rises or falls on a certain set of circumstances in a

6       certain incident.  When you get in a case where there is all

7       sorts of evidence being put on, you and I both have experience

8       of this, of other incidents involving other police officers,

9       that influences the jury's perception of the individual's

10      claim.  There is a prejudice there.

11             Now, maybe you can address it through instructions,

12      cautionary instructions, jury instructions, those sorts of

13      things, but the case law recognizes the prejudice there, and

14      that is something to be taken into account.

15             THE COURT:  Why don't we wait until after discovery

16      to see where we are going on that rather than right here at the

17      initial.  We haven't even submitted an answer yet.  All right.

18      Thank you, Mr. Powers.

19             Mr. Bonner, you may be heard.

20             MR. BONNER:  Thank you, Your Honor.

21             Regarding the first issue which is the state claims,

22      I wish I had a better argument for you than equitable tolling,

23      but we do not.  If -- there was some delay in taking the 50-h

24      hearing which caused us to delay, but beyond equitable tolling,

25      unfortunately there is really nothing I can argue on that

Motion

1    point.

2            THE COURT:  What I can't understand at the moment is

3    why your client ended up pleading guilty to something in this

4    case.

5            MR. BONNER:  So I would like to --

6            THE COURT:  That's to be seen.

7            MR. BONNER:  And that leads me to the second point

8    which is the issue of the false arrest and false imprisonment.

9    I believe that we attached as Exhibit B the transcript from the

10   hearing before Judge McMahon.  And if you read that, what the

11   judge says is, the court finds that over a period of April

12   through July 2016, defendant repeatedly showed up at various

13   criminal and traffic stops where Officer Smith was and

14   proceeded to verbally accost the officer by yelling and

15   claiming a tornado is coming.

16           So if you've watched the video of this incident, he

17   didn't do any of that.  The conviction was based on conduct

18   that occurred prior to the conduct at issue.  The conviction

19   was for apparently other instances where Mr. Crawley showed up

20   to videotape various traffic stops.  If you watch the video in

21   this case, the contact between Mr. Crawley and the officer was

22   initiated by the officer.  Mr. Crawley had said nothing and

23   done nothing to the officer prior to that.

24           THE COURT:  So he shouldn't have pled guilty to

25   anything?

Motion

1          MR. BONNER:  I don't believe he should have.

2          THE COURT:  But he did.

3          MR. BONNER:  Well, he actually didn't plead guilty.

4   I know that it says that, but if you read the attachment, he

5   was found guilty.  I don't quite know why the attachment to the

6   defendant's papers included a guilty plea, but he was found

7   guilty.

8          MR. POWERS:  Yes, he didn't -- there was an actual

9   trial, Your Honor.  He was found guilty.  There was an

10  evidentiary -- there was a trial.  He was actually found guilty

11  of harassment second.

12         MR. BONNER:  But the harassment second degree, the

13  factual basis for that finding did not occur on the date in

14  question.  In other words, what he was doing at the time the

15  officer made the decision to arrest him, which if you watch the

16  video, the officer makes the decision to arrest him when he

17  says I can't hear you.  The officer then stops what he is

18  doing, walks across the street, and initiates the arrest.

19         If you look at what he is convicted of in Exhibit B

20  to our submittal, it has to do with yelling and calling him an

21  Uncle Tom and doing things that did not occur on the date he

22  was arrested.  So while I can't argue on the case law, I think

23  as a factual matter, this is distinct.

24         This is an officer who is initiating arrest based on

25  conduct that included solely saying to the officer I did not

Motion

1   hear you.  Officer makes the decision at that point to arrest.

2   He walks over.  He says, you are under arrest, turn around, you

3   are under arrest.  So even if the harassment argument was made

4   that he was -- he was in fact convicted on that, it seems like

5   the factual basis for that would still have to be present at

6   the time of the arrest for there to be probable cause.

7         If you watch the video, it is undeniable that there

8   is no probable cause for the underlying claims that he was --

9   that the officer --

10        THE COURT:  What exactly was he convicted of?  I

11  mean --

12        MR. BONNER:  He was convicted of harassment in the

13  second degree.

14        THE COURT:  Wasn't that as a result of the incident

15  that's on the video?

16        MR. BONNER:  No, Your Honor.  So if you -- what I

17  was reading earlier is for the judge's opinion.  The judge --

18  it is what the judge ordered, John McMahon what he ordered

19  following the trial.  Judge McMahon, following the trial on

20  June 27, 2017, what the court finds is:  The court finds that

21  over the period of April through July 2016 -- so he is talking

22  about incidents that occurred prior to the incident in

23  question -- the defendant repeatedly showed up at various

24  criminal and traffic stops where Officer Smith was and

25  proceeded to verbally accost the officer.

Motion

1              So that's what he was convicted of.  But that didn't

2   occur on this occasion.  If you watch the video, he did not

3   verbally accost the officer.  He sat -- he made some comments

4   to himself.  But the officer didn't hear those comments.  The

5   officer initiated contact with Mr. Crawley by saying if you say

6   anything, you are going to jail.  So in essence, what he was

7   convicted of was prior conduct, not the conduct that occurred

8   on the specific day where he was arrested by the officer.

9              THE COURT:  What was he charged with as a result of

10  the incident?  And what happened to that charge?

11             MR. BONNER:  Those charges got dismissed.  He was

12  charged with obstructing a government administration in the

13  second degree which is -- this is what the complaining officer

14  said that he did.  He says:  On the aforementioned date, time,

15  and location above, defendant Maurice Crawley did commit the

16  crime of obstruction of a governmental administration in the

17  second degree.  The defendant did so when he intentionally

18  attempted to prevent from a public service from performing an

19  official function.

20             THE COURT:  And what happened to that charge?

21             MR. BONNER:  Dismissed.

22             THE COURT:  By who?

23             MR. BONNER:  By Judge McMahon, I presume by

24  Judge McMahon, who is the judge, the trial judge.

25             THE COURT:  So it never went to trial?  Or did it go

Motion

1  to trial and he dismissed it?

2           MR. BONNER:  I don't exactly know that, Your Honor,

3  but I do know it was dismissed.

4           THE COURT:  Mr. Powers, can you enlighten me on

5  that?  The charges that occurred as a result of what the

6  litigation is here, what happened to them and were they

7  dismissed?

8           MR. POWERS:  If you look at --

9           THE COURT:  And if they were, why would your motion

10  to dismiss the false arrest be granted if we are talking about

11  a conviction of incidents that occurred prior when he was

12  filming people?

13           MR. POWERS:  Well, I would say -- I have a few

14  responses to that, Your Honor.  If you look at the certificate

15  of conviction, it has the charge convicted, and the two charges

16  that the plaintiff was arrested for.  The certificate of

17  conviction has the arrest date, July 28, 2016.  This is the

18  conviction that arose out of that arrest.

19           Now, it is not the same as the charges that he was

20  arrested for, but that's not required under the law.  To the

21  extent that counsel is representing to you that the July 28th

22  incident was not within the incidents that Judge McMahon

23  described between April and July of 2016, I disagree.  The

24  first fifty-one pages of this transcript were not provided to

25  you --

Motion

1            THE COURT:  Right.

2            MR. POWERS:  -- by the plaintiff.  I have some

3    knowledge of the issues and the evidence that came in that was

4    tried.  The incident that appears on the video is the

5    culmination of a series of incidents where this individual

6    showed up during these arrests.

7            THE COURT:  What did he dismiss?

8            MR. POWERS:  The OGA and the resisting arrest.

9            THE COURT:  As a result of the incident of

10   July 28th, right?

11           MR. POWERS:  My understanding, and I don't know the

12   answer to this, but my understanding is that those were

13   dismissed by a prosecution, and then they proceeded with the

14   harassment second, but I don't know that for sure.

15           THE COURT:  So how can I make a decision at this

16   time under these circumstances that you are requesting?

17           MR. POWERS:  Because I have provided you the

18   certificate of conviction which establishes that this

19   conviction arose out of that arrest, and the case law holds

20   that you don't have to be convicted of the charges that you are

21   arrested for.

22           THE COURT:  Yes, I understand that.  I understand

23   that.  But if you are arrested for something that occurred on

24   July 28th, and you plead guilty to something other than that,

25   that's not related to that arrest -- or not arrested to what

Motion

1   you were arrested for, you mean to say that if he pled guilty

2   to something like some incidents, say, with his girlfriend,

3   that had nothing to do with this, that he would still be barred

4   from bringing a false arrest claim here if the charges that he

5   was arrested for were dismissed?

6           MR. POWERS:  I would not, but that's not the

7   situation, Your Honor.

8           THE COURT:  I know it isn't, but isn't that what we

9   are actually talking about?  He was convicted of prior

10  incidents.

11          MR. POWERS:  That is not what we are talking about.

12          THE COURT:  Isn't that what the law says that

13  because this is a cumulation of something, and that that's

14  the -- he is convicted of activity prior -- I mean, what was he

15  actually arrested for on July 27th, 28th, and what was he

16  convicted of?  Or were they the same-- were they part of that

17  arrest, and if so, why?

18          MR. POWERS:  Well, as indicated by the certificate

19  of conviction, they were, Your Honor, and the language that

20  counsel read you, that he just read you from Judge McMahon,

21  states:  The court finds then for the period of April through

22  July of 2016.  This incident occurred on July 28, 2016.  To say

23  that that language supports a finding that this particular

24  incident wasn't part and parcel of the conduct that the

25  plaintiff was convicted of, is not only inconsistent with the

Motion

1    transcript that we don't have, it is inconsistent with the

2    three pages that plaintiff has submitted.

3              But you don't need this transcript because you have

4    a certificate of conviction.  You know that that conviction

5    arose out of the arrest because it has the arrest date on it

6    that's certified by the court.  You are entitled to rely on

7    that.  There is case law that says that you are entitled to

8    rely on the certificates of conviction in Rule 12 scenarios.

9              THE COURT:  Okay.  Thank you.

10             Mr. Bonner, if he pleads guilty or is convicted of

11   something that is part of the arrest, why isn't that sufficient

12   to bar his claim?  It was all part of the same matter.  And how

13   can he claim false arrest when he plead guilty to something

14   that was part of that arrest?

15             MR. BONNER:  Because it was not part of that arrest

16   on this occasion.  If you've watched the video, he didn't do

17   any of the things --

18             THE COURT:  Well, that's a question -- that was

19   why -- he was maybe acquitted of that because of what was on

20   the video, but he was arrested because of all the other things

21   he did over the period.  That was part of it, wasn't it?

22             MR. BONNER:  No, I do not believe so, Your Honor,

23   and this is why.  If you start with the proposition that a

24   citizen of the United States has the right to stand and

25   videotape a police officer who is conducting an arrest --

Motion

| | |
|---|---|
| 1 | THE COURT:  Be seated, Mr. Powers. |
| 2 | MR. BONNER:  If you start with that on the First |

3  Amendment, if you start with that proposition, then assuming

4  there had been prior incidents where he yelled at this officer

5  and harassed this officer, he then probably was warned.  Don't

6  do that anymore.  So on this occasion, he is not doing it.  He

7  is engaging in completely lawful conduct.

8           He is observing.  He is not yelling at the officer.

9  He is not doing anything to harass the officer.  He is simply

10  taking the video.  The officer then escalates the situation by

11  initiating a contact with Mr. Crawley by saying, if you do

12  anything, I am going to arrest you.  He hasn't done anything at

13  that point.

14           Then the officer makes the decision to arrest when

15  Mr. Crawley engaged, just simply asked the question, what did

16  you say, I didn't hear you?  So the question for false arrest

17  is whether there was probable cause at the time the officer

18  made the decision to arrest.

19           Now, the officer may have been making a decision

20  based on this history, based on the fact that in prior

21  occasions, this guy has harassed me, and that may have been

22  what he subjectively was thinking, but that's not the question

23  for probable cause.  The question is would -- objectively at

24  the time he makes the decision to arrest, had there been

25  conduct that would give a reasonable officer probable cause

Motion

1   that a crime had been committed.

2          And we have the video.  We know on this occasion

3   that didn't happen.  So if the officer was basing the arrest on

4   prior conduct, and if the conviction was based on prior

5   conduct, I think there is still a live factual question as to

6   whether or not at the time he made the arrest, he had probable

7   cause.

8          THE COURT:  Well, why if he had pled guilty, it

9   would be clear to resolve all issues, that would bar any false

10  arrest claim.  Where is it different because he was convicted

11  as opposed to pleading guilty?  How would -- why would that be

12  different?

13         MR. BONNER:  I think it is different, Your Honor,

14  because the judge found facts unrelated to this particular

15  incident that supported the guilty verdict.  And we know that

16  he found those facts because if you have watched the video, and

17  you look at what the judge says he finds, Mr. Crawley did not

18  do any of the things mentioned in the judge's findings on the

19  video.

20         And this is a different situation than maybe other

21  cases because we know exactly what Mr. Crawley did before the

22  cop made the decision to arrest, and I have the video if you --

23  it sounds like you have already seen it before.

24         THE COURT:  I have viewed the video.

25         MR. BONNER:  And if you view the video, what I was

Motion

1    ask Your Honor to do, if you view the video, and you look at

2    the court's findings, you will see that none of the things that

3    the court found, happened on the day of the arrest.

4            So, yes, the arrest put Mr. Crawley into the system,

5    and yes, there were charges that the officer brought that were

6    dismissed, and yes, the district attorney decided, well, we are

7    going to go ahead with a prosecution likely because of the

8    police officer wanting to have a conviction.  So those things

9    did happen.

10           But I think it is a different type of scenario when

11   we can look exactly at the conduct that happened before the

12   arrest and compare it to what the judge found.  And in that

13   context, the initial charging -- the initial charges that the

14   police officer brought are clearly not precedent.  I mean,

15   there is no way that can -- you watched the whole arrest

16   happen.  You watched the cop initiate the conduct.  There is no

17   question that Mr. Crawley did not interrupt that or engage with

18   that.

19           THE COURT:  I get your point.  Anything further?

20           MR. BONNER:  I would say that with respect to the

21   pleading, Your Honor, we do try to over plead because of issues

22   of Iqbal, and we just try to make sure we have everything in

23   there so that we are not prejudiced when it comes to these by

24   saying we didn't plead enough specificity.

25           And with respect to bifurcation, I do not believe it

Motion

1   would aid or be more efficient to have bifurcation ordered,

2   especially for discovery.  The additional discovery, I do not

3   think would be overly burdensome.  I also think that there

4   is -- and I don't want to overstate this, but I believe that

5   Mr. Crawley, the reason he was engaging in videoing the scene

6   relates to a larger history with the Syracuse Police

7   Department, and I believe that is relevant, and I believe that

8   will come through with Monell.

9         And I also think, Your Honor, that we are civilized

10  attorneys and we bring these cases not just for our individual

11  plautus (phonetically) but in hopes that we can create a

12  broader change throughout society, throughout the community,

13  and having Syracuse as a defendant, having the Monell claims in

14  place, we believe are important to indicate the rights under

15  the constitution for all citizens.  So we would want to see the

16  trial go forward as to Monell and discovery as to Monell, as

17  well as the individual defendants.

18        THE COURT:  Thank you.

19        Thank you for your argument, Counselors.

20        I am going to reserve decision and issue a written

21  opinion.

22        Mr. McBrearty.

23        COURT CLERK:  Court stands adjourned.

24

25

CERTIFICATE OF OFFICIAL REPORTER

1

2          I, NANCY L. FREDDOSO, RPR, Federal Official Court

3   Reporter, in and for the United States District Court for the

4   Northern District of New York, do hereby certify that pursuant

5   to Section 753, Title 28, United States Code that the foregoing

6   is a true and correct transcript of the

7   stenographically-reported proceedings held in the

8   above-entitled matter and that the transcript page format is in

9   conformance with the regulations of the Judicial Conference of

10  the United States.

11

12

13                      S/NANCY L. FREDDOSO, RPR

14                  Federal Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25